## C. C. WILBOURN *v.* LELIA S. WILBOURN.

1. EXECUTOR DE SON TORT.—Where a testator bequeathed his personal estate to his widow for the use of herself and their children, subject, however, to his debts, and she had the use and possession of it for several years before the qualification of a legal representative, the facts constituted her executor *de son tort*, and the estate proving insolvent, rendered her liable to creditors for such part as she appropriated and for the income thereof.

2. SAME — CASE AT BAR.—The testator bequeathed his personal property, including slaves, to his widow, for the use of herself and their children, subject to his debts, and she had the use of it several years before the qualification of an executor; and, in the meantime, raised, by the labor of the slaves, on the children's land, several crops of cotton and other products, part of which was appropriated by the widow for herself and children, and part by the executor in payment of debts, the estate proving insolvent. On an action of trover by the widow against the executor, for the cotton appropriated by him, *held*, that she could not recover, but that the cotton was properly appropriated.

*L. P. Cooper* and *Walter & Scruggs*, for plaintiff in error.

The reporter finds no brief for plaintiff in error in the files.

*White & Chalmers*, for defendant in error.

We are told by counsel for plaintiff in error, that the appointment of an administrator relates back to the

death of his intestate, so as to clothe him with the legal title to the assets as of that date.

It is a familiar principle, and counsel need not have been at the trouble of arraying authorities in support of it. But we never heard that the administrator's appointment related back so as to clothe him with the title to property that never was assets of the estate. Nothing is truer, either in law or religion, than that when a man dies he stops making money. Religion teaches us that he goes to a country where no more money is made, and the law tells us that he leaves nobody behind to make money for him.

There is only one conceivable way in which a crop grown after a man's death can become the property of his estate—that is for the administrator to carry on the farm under the order of court.

But in the case at bar there was no administrator for five years after the cotton had been raised.

The utmost that could, under any circumstances, be claimed for the estate, would be compensation for the use of the personal property used. That can not be done in the present case, however, for several reasons. In the first place, the action of trover only involves rights of property and of possession, and no set-off can be pleaded against it. In the second place, the personal property was devised to appellee, nor does the subsequent insolvency of the estate make any difference. A legatee who has received a legacy from an estate may be made to refund if the estate prove insolvent, but is never liable for interest or hires.

Even crops growing on the land of a decedent at time of his death (styled emblements in law) do not, in this state, belong to the administrator. McCormick v. McCormick, 40 Miss. 760.

How, then, can crops belong to him which were planted after his death, and upon somebody else's land, and before there was any administrator ?

The idea is certainly a rich one ! !

The other proposition contended for is, that plaintiff was estopped from bringing this suit because she had been cited, and had appeared as the guardian of 'her children in the litigation between them and appellant in the chancery court.

We are sincerely at a loss to know what counsel mean by this position.

*Res adjudicata* can only apply where the subject-matter has been the same and the parties have been the same. Mrs. Wilbourn was no party to the litigation between C. C. Wilbourn and her children. She was cited and served with process only as the newly-appointed guardian of her children, because the statute required that she should be. The exceptions filed in that case were stated upon their face, as, indeed, the law made them, " the exceptions of the minor heirs of Wallace Wilbourn, answering by their guardian and mother, Lelia S. Wilbourn.

Again, a party is never estopped by any litigation, even though he be a party as to any matter which it was impossible to litigate therein.

Now, if we admit that Mrs. Wilbourn was a party to the first litigation, she could not have possibly propounded her claim to the cotton in said suit. She was cited, as guardian of her children, to show cause why the final account of their former guardian should not be approved as stated. She could urge, as an objection thereto, that he had failed to charge himself with cotton belonging to his wards, but she could not possibly urge, as an objection, that he had failed to credit the children with property that belonged to herself. Such an exception, if filed, would have been ridiculous.

There was no possible way in which her claim to the cotton could have been litigated upon the settlement of the final account of their former guardian.

We really do not see how the question can be seriously discussed.

We will only remark, in conclusion, that no possible injustice can be done to the administrator by affirming the judgment in this case. The administration is still going on since the decision of the chancellor in the other case; the administrator has been allowed credit on his account, as administrator, for the $500 which he was compelled to pay to the children for rents in that matter. He will be allowed by the chancery court the credit for the judgment rendered against him here, so that he has no interest in the matter. This is a contest between the widow and the creditors. The decision of the chancellor was wrong, but as Mrs. Wilbourn desired to do injustice to no one, she has given credit in taking her judgment for the $500 previously allowed her children.

SIMRALL, J.:

In 1861, W. Wilbourn deceased testate, devising his property, after the payment of his debts, to his wife, for the use of herself and children. This bequest only applied to the personal estate; the testator only owning a life estate in real estate, the remainder being in his children. After the testator's death, his widow, Lelia S. Wilbourn, and her children, continued to reside upon the plantation. Not until 1866 was the will admitted to probate, and letters of authority to execute it committed to C. C. Wilbourn, who, at the same time, was appointed guardian of the two minor children.

After the death of her husband, Mrs. Wilbourn, with her minor children, continued upon the plantation in which her husband had a life estate, and under her direction two or three crops of cotton and other products were made with the slaves which belonged to her husband. Part of the crops thus grown in 1862, 1863, 1864, were sold by the widow, or by her father-in-law,

for her account and with her consent.   In 1866, twenty-one bales of this cotton were sold by C. C. Wilbourn, administrator with the will annexed, and charged in his accounts in the probate court.

This suit was brought by Lelia S. Wilbourn, the widow, to recover the value of these twenty-one bales of cotton, which sold for $2,029 net.

The estate was vacant from the death of the testator in 1861, until 1866, when C. C. Wilbourn was appointed administrator with the will annexed.   The failure to put the estate in the regular course of administration, for this long period of time, is doubtless attributable to the unsettled condition of the country, brought about by the late war.   The omission to do so did not affect the rights of parties as devisees, legatees or creditors; the suspension of the statute of limitations during the time saving the interests of all parties.

The cotton produced after the death of the testator was grown upon lands then the property of the children, but it was made with the labor of the slaves, stock and implements which had belonged to the testator.   It is contended by Mrs. Wilbourn that, in these circumstances, being grown under her control and management, it is her property, with which the administrator has no right to intermeddle, and that his sale was a conversion, making him responsible for its value.   The bequest to Mrs. Wilbourn is as follows: " I bequeath to my wife Lelia, after a settlement of all just claims against my estate, all my property of every description, except that part deeded by my father to my children," etc., " to have and hold during widowhood for use of herself and children."   *   *   *   By the terms of the bequest, the residue of property after payment of just debts, was given to the wife and children, or rather to the wife for the use of herself and children.   The incumbrance put upon the property was no greater than the dedication which the law made of it for the

benefit of creditors.    The possession and use of the prop-
erty by Mrs. Wilbourn before the qualification of a
legal representative, constituted her executor *de son tort*,
and as such she would be accountable to creditors for
so much of it as she appropriated.    So also the legal
representative might bring her to account for the like
purpose.    The estate being deeply in debt, proved to
be insolvent; Mrs. Wilbourn could not successfully de-
fend either suit on the plea that the property had been
bequeathed to her.    Her right to the use of the prop-
erty, or its annual income, is subordinate to the claims
of creditors.    The will, in accordance with the law,
postpones her claim until creditors are satisfied.

The administrator or executor represents the person
of the intestate or the testator, in respect to the per-
sonal estate; the grant of letters to either hath relation
to the time of the intestate's death.    Toller's Ex'rs, 133.
If, therefore, the tort be committed affecting the goods
between the death of intestate and the appointment,
the executor or administrator may have his action.    It
was the legal duty of C. C. Wilbourn, as administrator,
to reduce in possession all the goods and effects which
belonged to the testator, and to assert claims and obtain
redress from all who had intermeddled with the estate.
It is plain that Mrs. Wilbourn would be liable to him
for the effects which she had used, and also for any in-
come or profits realized by her from the estate.    If she
controlled the labor of the slaves, and received the
profits and income, she might discharge herself by turn-
ing over to the administrator the products realized, or
she might account for the value of the labor as hire.
She could not take possession of the estate which was
involved in debt, and employ it to produce income, and
refuse to account because of the bequest to herself.    In
law, she could only enjoy the estate in that right when
creditors were satisfied.    Her possession was in her own
wrong, and she could only discharge herself as she

could show an appropriation, such as the law would have made. Hardy v. Thomas, 23 Miss. 544. Among the acts which constitute an executor *de son tort* are, taking possession of the goods, converting them to her own use, "seizing a specific legacy without the assent of the lawful executor." 3 Bac. Abr. 21; Godolph. 91; Toller's Ex'rs, 37. So would be the buying of goods at sheriff's sale under a judgment fraudulently confessed to him by the intestate with a view to defeat creditors. Osborne v. Moss, 7 Johns. 161.

The real controversy is between the creditors of the testator and Mrs. Wilbourn, or her children. This is manifested in the contestation in the probate court on the settlement of C. C. Wilbourn's accounts as guardian (a transcript of which is in evidence in this cause). There Mrs. Wilbourn, the successor of C. C. Wilbourn in the guardianship, excepted to his accounts because he did not charge himself with the proceeds of this cotton as a fund belonging to the wards. The court held that the cotton was assets of the estate of testator, and should be accounted for by C. C. Wilbourn as administrator; but as the cotton was grown upon the land of his wards, he was ordered to charge himself with $500, the value of the rental.

It is true that Mrs. Wilbourn, as argued by her counsel, did not occupy such attitude in that litigation as to conclude her personally. She is not technically estopped from setting up a claim in her own right to the cotton. But she did claim it on behalf of her wards. That claim manifestly was made upon the idea that it was grown upon their land. The court was of opinion that the just claim of the minor heirs was satisfied by awarding them the rent of the land. Mrs. Wilbourn has no other claim than that the cotton was produced by the slaves which belonged to the estate whilst under her control. Manifestly, the administrator, for the benefit of creditors, has a better right to the proceeds of their labor

than she has as legatee.  As we have seen, her possession and appropriation of the property and its income, put her in the attitude of executor *de son tort*, and, as such, liable to creditors or the administrator.  The fact that she was legatee did not, in the circumstances, improve her condition.  It might be that the exact measure of her accountability would be the value of the effects consumed and the hire of the slaves.  But she had a maintenance out of the estate for several years, sold two or more lots of cotton, was allowed and paid by the administrator provisions and money for a year's support, and, so far as the record discloses, made no objection to the appraisement of the cotton and its sale by the administrator as assets of the estate.  On her motion, the estate was charged with the rent of the land.  The labor that produced the cotton did not belong to her. She is accountable to the administrator and creditors, either for the product of that labor or for the rent value of the slaves, stock and implements employed in its production.  The administrator, it may be inferred, took charge of the cotton with her consent, or without her dissent; its value may not be in excess or might fall short of what she would owe; as executor *de son tort*, she is charged with effects consumed in the use, and with hire.

We think the first charge granted for the plaintiff was erroneous.  As said by the court in O'Reily v. Hendricks, 2 S. & M. 327, "charges (to the jury) must be pertinent to the state of facts before the court." There should always be a predicate laid in the testimony, and charges should be so framed as not to mislead. The assent of the executor, at common law, was necessary to sever the legacy from the estate and vest title in the legatee.  The Code of 1857, art. 118, p. 454, allows the legatee to sue for the legacy in the probate court, after the lapse of twelve months from the grant of letters testamentary; and if there be no debts or an excess

of assets without it, the court may order its payment; but then a refunding bond may be exacted. Packwood v. Bishop, 43 Miss. 505. The bond from a specific legatee may, however, be dispensed with if it is shown affirmatively that there were no debts. Magee v. Gregg, 11 S. & M. 70; Magee v. Harrington, 13 S. & M. 403.

The bequest to Mrs. Wilbourn is subject to the debts. As against the executor she cannot acquire a right to reduce it to possession and hold it, until after the expiration of a year from his qualification, and not then, if the estate is in debt, and the thing bequeathed is needed to pay creditors. The principle contained in the charge has application, where the legatee is in possession with the assent of the executor, or where she has recovered the property from the executor; but has no application where the legatee takes possession immediately on the death of the testator, and holds for a time before the will is probated and the executor appointed. As we have seen, if the estate is involved in debt, such possessions and appropriations will be treated as that of executor *de son tort.* We are of the opinion that on the facts in evidence, which are few and plain, the plaintiff is not entitled to recover.

Wherefore, the judgment is reversed, and a *venire de novo* awarded.